**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KENNETH CAMPBELL, *et al.*,      )
        Plaintiffs,      )
                )
     v.      )
                )
NATIONAL RAILROAD PASSENGER      )
CORPORATION (AMTRAK), *et al.*      )
        Defendants.      )
_____)

Civil Action No. 99-2979
(EGS)

**FILED**

SEP - 6 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>**MEMORANDUM OPINION AND ORDER**</u>

     Plaintiffs filed a class action complaint against defendant National Railroad Passenger Corporation ("Amtrak") alleging that they, and the class they seek to represent, were subjected to a systematic pattern and practice of racial discrimination. Pending before this Court is Amtrak's motion to dismiss, or, in the alternative, for a more definite statement.  Upon consideration of the motion, the opposition thereto, case law, and the argument in open court, it is hereby

     **ORDERED** that the motion to dismiss is **DENIED;** and it is

     **FURTHER ORDERED** that the motion for a more definite statement is **GRANTED IN PART** and **DENIED IN PART.**

**I.    BACKGROUND**

     Current and former union represented employees of Amtrak and applicants for union represented positions filed suit against

1



Amtrak and fifteen unions.  They assert their individual claims
and seek to represent two classes.  Plaintiffs allege that they
were subjected to a systemic pattern and practice of racial
discrimination and racial harassment.  The allegedly
discriminatory policies, practices, and procedures present claims
relating to discrimination in hiring, advancement, training,
discipline, work and equipment assignments, and terms and
conditions of employment, as well as, hostile working conditions
based on race.

## II.  MOTION TO DISMISS

Amtrak moves to dismiss individual claims for each of the
following independent reasons:  1) certain 42 U.S.C. § 1981
claims are barred by the statute of limitations; 2) claims of
plaintiffs who previously filed a charge involving the same
conduct complained of here, but failed to sue, are barred by the
statute of limitations in their right-to-sue letters; 3) certain
Title VII claims are barred by the statute of limitations; and 4)
claims which do not allege a timeframe fail to state Title VII
claims.[1]  Amtrak also moves for a more definite statement with

---

[1]Amtrak also raised several issues that have since been
withdrawn or resolved.  First, Amtrak has withdrawn its argument
that plaintiffs failed to state a *prima facie* case of
discrimination, in light of this Circuit's holding in *Sparrow v.
United Airlines,* 216 F.3d 1111 (D.C. Cir. 2000), that allegations

respect to certain allegations.  Plaintiffs incorrectly assert

that Amtrak's motion to dismiss should be converted to a summary

judgment motion; therefore, plaintiffs' request for discovery to

respond to a motion for summary judgment is denied.[2]


A.   Statute of Limitations for § 1981 Claims

Plaintiffs allege that "Amtrak has discriminated against the

named Plaintiffs and all members of the proposed classes by

denying them the same rights as are enjoyed by white non-exempt

employees and applicants for non-exempt employment in the making,

performance, modifications and termination of their employment

---

such as those in the complaint withstand a motion to dismiss.
Second, Amtrak had argued that the claims of plaintiffs who have
not yet received a right-to-sue letter should be dismissed for
failure to exhaust administrative remedies.  Amtrak acknowledges
that plaintiffs have cured this pleading defect.  Thus,
defendant's argument that plaintiffs' class claims should be
dismissed for failure to exhaust administrative remedies is moot.
Third, Amtrak moved to dismiss Miriam Morgan's claims, as barred
by a prior settlement agreement.  At the hearing, the Court
ordered the plaintiffs to provide a more detailed statement in an
amended complaint to ensure that these claims are not the same
claims that plaintiff Morgan is barred from bringing by her
participation in *McLaurin v. National Railroad Passenger
Corporation.*

[2]Amtrak may present evidence supporting dismissal, except
when moving under Rule 12(b)(6).  In addition, defendant may
reference documents specifically referenced in and central to the
complaint without converting its 12(b)(6) motion into a motion
for summary judgment.  Finally, the Court will ignore any new
evidence presented by defendants, in order to preserve the nature
of the motion.

relationship with Amtrak and to the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended." Plaintiffs raised, but the parties did not adequately address, whether the statute of limitations for § 1981 claims are subject to the statute of limitations borrowed from D.C. Code § 12-301(8), which is three years, or the federal four-year default statue of limitations, 28 U.S.C. § 1658. The Court requested additional briefing on this issue. In the supplemental briefing the parties contested the applicability of 28 U.S.C. § 1658 to 42 U.S.C. § 1981 claims. The issues are framed as follows: 1) whether 28 U.S.C. § 1658 applies to any cause of action arising under 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, P.L. 102-166 § 101, 105 Stat 1071 (1991); and 2) if 28 U.S.C. § 1658 does apply to claims under 42 U.S.C. § 1981, to which claims does it apply.

Courts considering claims under § 1981 have historically applied the state personal injury statute of limitations because § 1981 does not contain a statute of limitations, see *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987). Plaintiffs argue that this well-settled proposition was altered by Congress' enactment of the federal default statute of

4

limitations, and then the passage of the Civil Rights Act of

1991.  Section 1658 states that

> [e]xcept as otherwise provided by law, a civil action
> arising under an Act of Congress enacted after the date
> of the enactment of this section [December 1, 1990] may
> not be commenced later than 4 years after the cause of
> action accrues.

The Civil Rights Act of 1866 was amended in 1991 by the

Civil Rights Act of 1991.  Before 1991, § 1981 stated that:

> [a]ll persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens,
> and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every
> kind, and to no other.

The pre-1991 statute protected only two rights: the right to make

contracts, which "extend[ed] only to the formation of a contract,

but not to problems that may arise later from the conditions of

continuing employment," and the right to enforce contracts, which

"embrace[d] protection of a legal process, and of a right of

access to legal process, that will address and resolve contract-

law claims without regard to race."  *Patterson v. McLean Credit

Union,* 491 U.S. 164, 176-177, 109 S. Ct. 2363, 105 L. Ed. 2d 132

(1989).

The Civil Rights Act of 1991, which became law on November 21, 1991, revised § 1981, making the language quoted above subsection (a) and adding two new subsections:

(b)  "Make and enforce contracts" defined
     For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c)  Protection against impairment
     The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

It is clear that the Civil Rights Act of 1991 created at least one new cause of action that was not cognizable under the pre-1991 version of the statute. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994).

A review of the ways in which this pea has been split highlights the difficulty of this issue. *Compare Nealey v. Univ. Health Serv., Inc.*, 2000 WL 1473132 (S.D. Ga. June 21, 2000) (applying § 1658 to § 1981); *Brown v. Jenny Craig Weight Loss Ctr*, 2000 WL 989918 (S.D. Ohio May 2, 2000) (same); *Rodgers v. Apple South, Inc.* 35 F. Supp. 2d 974 (W.D. Ky 1999) (same); *Miller v. Federal Express Corp.*, 56 F. Supp. 2d 955 (W.D. Tenn. 1999) (same); *Stewart v. Coors Brewing Co.*, 1998 WL 880462 (D. Colo. Dec. 14, 1998) (same) *and Alexander v. Precision Machining*

*Inc.*, 990 F. Supp. 1304 (D. Kan. 1997)(same) *with Madison v. IBP,*
*Inc.*, 257 F.3d 780, ___ (8th Cir. June 25, 2001) (finding § 1658
not applicable to a § 1981 action); *Zubi v.* AT&T, *219 F.3d 220*
*(3rd* Cir. 2000) (same); *Hall v. Flight Safety Int'l, Inc.*, 106 F.
Supp. 2d 1171 (D. Kan. 2000); *Lasley v. Hershey Foods Corp.*, 35
F. Supp. 2d 1319 (D. Kan. 1999)(same); *Mohankumar v. Dunn*, 59 F.
Supp. 2d 1123 (D. Kan. 1999)(same); *Lane v. Ogden Entertainment,*
*Inc.*, 13 F. Supp. 2d 1261 (M.D. Ala. 1998) (same); *and Davis v.*
*State of Cal. Dept. of Corr.*, 1996 WL 271001 (E.D. Cal. Feb. 23
1996). This Circuit has yet to address this issue.[3]

Only two Circuits have addressed this issue[4] and the
district courts are split. The Third Circuit, in *Zubi*,
recognized three distinct approaches in the case law. 219 F.3d
at 222. The first approach holds that when an Act of Congress
creates a claim that did not previously exist, even if this is
done by amending a previously existing statute, § 1658 applies.

---

[3]This Circuit and district courts within it have applied the
most analogous state law statute of limitations to section 1981
claims, without addressing the applicability of § 1658. *See,*
*e.g., Carnie v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir.
1998).

[4]The Sixth Circuit has acknowledged that this issue exists,
in *Young v. Sabbatine*, No. 97-5169, 1998 WL 136559, at *3 (6th
Cir. Mar. 19, 1998), but has not ruled on the issue. The Eleventh
Circuit also chose not to address this issue, when presented with
an opportunity. *See Taylor v. Alabama Intertribal Council Title*
*IV*, 2001 WL 930573 (11th Cir. Jul. 9, 2001).

*See id.*  This approach results in § 1981 claims based on the
discriminatory termination of contract being governed by the
four-year limitations in § 1658, and all other claims based on §
1981 being governed by the analogous state statute.  The second
approach holds that when an Act of Congress amends an existing
statute in a manner that substantially alters its meaning, § 1658
applies to all claims accruing after the passage of the new
statute without regard to whether an identical claim arising
earlier could have been successfully pursued under the prior
statute.  *See id*.  This view would apply § 1658 to all § 1981
claims being governed by the four-year federal limitations
period.  The third approach holds that when an Act of Congress
amends a statute existing before the date, as opposed to creating
new law without reference to previously existing statutory
language, § 1658 does not apply to all claims accruing after the
amendment without regard to whether an identical claim arising
earlier could have been successfully pursued under the prior
statute.  *See id*.

Since statutory amendments become law only when an Act is
enacted by congress, an "Act of Congress" can reasonably be read
to include any legislative measure that amends preexisting
statutory text.  However, the treatment of every amendment to an
existing statute as an "Act of Congress" for purposes of § 1658

8

could change the statute of limitations period for many causes of action that were viable before the effective date of § 1658. Congress did mandate that § 1658 would be applicable to federal causes of action viable before the effective date of § 1658. Congress valued the avoidance of frustrated expectations more highly than the national uniformity it sought through the passage of § 1658. *See Zubi*, 219 F.3d at 223 (citing H.R. Rep. No. 101-734 § 111, at 24 (1990)).

It would seem that the first option would be most in keeping with Congress' intent, yet consistent with the statutory language.  Yet, as the Third Circuit illustrates, there are a myriad of problems with interpreting § 1658 as applying to claims that were not viable before the passage of § 1658, even if such claims were created with reference to pre-existing law.  *See id.* at 224.  First, such an interpretation would "result[] in different statute of limitations being applied to plaintiffs suing under the same statute depending on the particular facts of their claims."  *See id.*  The *Zubi* court notes that this interpretation would seem to generate the sort of confusion and unfairness Congress sought to avoid.  *Id.*  Second, determining what is a new claim, created by an amendment, may not be an easy task.  The Civil Rights Act of 1990 illustrates why.  In amending the Civil Rights Act, Congress refuted the suggestion in *Price*

9

*Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), that Title VII was not violated when discriminatory animus is a factor in, but not a but-for cause of, an averse employment action.  Thus, a case where a plaintiff alleges that race was a motivating factor, even though not the only factor, for an adverse employment action could create controversy as to whether this is a new cause of action, not previously viable, or whether it is a cause of action based on the pre-§ 1658 language.  Another example, cited by *Zubi*, is as follows: since the Civil Rights Act of 1991 authorized, for the first time, the award of compensatory and punitive damages for intentional discrimination, is an action brought solely to recover such damages governed by § 1658 or the state statute of limitations?[5]  *Id.*  The *Zubi* court went on to hold that § 1658 applies "only when Congress establishes a new cause of action without reference to preexisting law. . . .," as this interpretation presented the least uncertainty of application. *Id.* at 225-26.  The Eighth Circuit recently followed *Zubi*,

_____

[5]The Court notes that courts have addressed similar issues when dealing with whether 28 U.S.C. § 1658 applies to the 42 U.S.C. § 1983 claims, since § 1983 was amended in 1996 to limit injunctive relief against judicial officers.  In *Laurino v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000), the Tenth Circuit held that because the amendment did not create a cause of action, § 1658 did not apply to those § 1983 claims.

without providing any new analysis.  See *Madison*, 257 F.3d at
780.

Although this Court is troubled by an interpretation that is
guided by the ease of application, the hard line rule adopted by
the Third Circuit seems to best embody the intent of the
legislature.  The Third Circuit's approach does not require
inquiry into whether a law has been so transformed by an
amendment as to "create a cause of action."  Thus, causes of
action that were viable before the passage of § 1658 will
continue to be governed by the analogous state statute of
limitations, regardless of how the contours of that cause of
action develop.  To bypass this result, Congress can repeal
previous laws, enact new laws without reference to preexisting
laws, or explicitly state the applicable statute of limitations
when amending or enacting legislation.  Accordingly, this Court
follows the ruling in *Zubi* and holds that § 1658 will apply only
to causes of action which do not reference preexisting law.

Plaintiffs argue that even if the three-year statute of
limitations applies, which the Court holds it does, the claims
here may be saved by the continuing violations doctrine.  The
continuing violations doctrine will not save claims of
individuals who were discharged prior to the statute of
limitations period, unless they were unaware of the

11

discriminatory nature until within the statute of limitations. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 473 (D.C. Cir. 1976); *Macklin v. Spector Freight Sys. Inc.*, 478 F.2d 979, 987 (D.C. Cir. 1973); *Rodriguez v. United States Dept. of Treasury*, 131 F.R.D. 1, 10-11 (D.D.C. 1990). The continuing violation doctrine will also not save claims where the plaintiff knew of the discrimination at a time outside of the statute of limitations and has not been the victim of any discrimination during the statute of limitations period. *See Kilpatrick v. Riley*, 98 F. Supp. 2d 9, 17 (D.D.C. 2000). Mindful that the continuing violation doctrine may still apply to save certain claims, the plaintiffs are directed to amend their complaint consistent with this ruling. The Court will entertain the viability of the continuing violations doctrine to particular claims after the development of the factual record.

### B.   Application of the Single File Rule

Some of the named plaintiffs have not filed an administrative charge as a condition precedent to this lawsuit. The single-file rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff. *See Medina v. Reinhardt*, 686 F.2d 997, 1013

(D.C. Cir. 1982); *Foster v. Gueory*, 655 F.2d 1319, 1321-22 (D.C. Cir. 1981); *Equal Employment Opportunity Comm'n. v. Air Line Pilots Assoc.,* 885 F. Supp. 289 (D.D.C. 1995). Amtrak argues that plaintiffs may not rely on a perfected individual charge if he or she has previously filed a charge related to the litigation. This Circuit has not addressed this issue.

The Eleventh, Fifth, and Eighth Circuits agree with Amtrak. In *Glitz v. Campaign Nationale Air France*, 129 F.3d 554, 558 (11th Cir. 1997), the court held that if a claimant files her own charge, she cannot rely upon other claimant's charges and should be bound by the statute of limitations stated in her right-to-sue letter. In *Monney v. Aramco Serv. Co.,* 54 F.3d 1207, 1223 (5th Cir. 1995), the court reasoned that allowing piggy-backing in these cases "belies the policies behind the single filing rule and controverts congressional intent." Once a charge is filed, the EEOC and the employer are entitled to rely on the allegations contained therein. *See id.* Similarly, the court in *Anderson v. Unisys Corp.,* 47 F.3d 302, 308 (8th Cir. 1995), held that the failure of plaintiffs to file suit within a period of days after receiving their right to sue letter precluded them from joining another plaintiff's claim. That court reasoned that plaintiffs "were given an opportunity to bring suit upon issuance of the right-to-due letter and failed to timely do so." *Id.*

The Sixth Circuit and several district courts agree with plaintiffs. The Sixth Circuit reasoned that "[t]he purpose of the single-file rule is no less well served in application to a potential plaintiff who has filed an untimely EEOC charge than one who has never filed an administrative charge." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995). The Southern District of New York has also weighed in on this issue and held that in light of the Title VII's liberal interpretation and objective, a plaintiff who had already filed an administrative claim was allowed to "piggy-back" on the claim of another plaintiff. *See Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1413 (S.D.N.Y. 1989). The court there noted that the general purpose of the filing requirement was met, namely notice and opportunity for conciliation, and defendant had not suffered any prejudice. *See id.* at 1413; *see also Connelly v. Manufacturers Hanover Trust Co.*, 1990 WL 129186 *3 (S.D.N.Y. Aug. 30 1990)(holding that as "the single filing rule applies to someone who has not filed at all, *a fortiori*, it applies to someone who has filed [a charge] with the EEOC and commenced suit five days late"); *Bryson v. Fluor Corp.*, 914 F. Supp. 1292 (D.S.C. 1995).

This Court agrees with the reasoning of the Eleventh, Fifth, and Eighth Circuits on this issue. Plaintiff should not be able

14

to revive stale claims to the detriment of defendant.  Allowing
such piggy-backing would seriously undermine the statue of
limitations established for such actions.  Notwithstanding, the
Supreme Court has held that "filing a timely charge of
discrimination with the EEOC is not a jurisdictional prerequisite
to suit in a federal court, but a requirement that, like a
statute of limitations, is subject to waiver, estoppel, and
equitable tolling."  *Zipes v. Trans World Airlines, Inc.*, 455
U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).
Accordingly, the court orders plaintiffs to amend their complaint
consistent with its ruling that a claimant cannot rely upon
another claimant's charges for conduct which she has previously
filed an EEOC charge[6], unless the statute of limitations in her
right-to-sue letter is subject to equitable tolling.  The Court
will entertain the viability of the equitable tolling of the
statute of limitations for particular claims after the
development of the factual record.


C.    Statute of Limitations for Title VII Claims

The applicable time period in this case is 300 days prior to
the earliest properly perfected charge, as all the relevant

---

[6]This limitation does not apply to conduct that has not been
the subject of a now stale EEOC charge.

15

perfected charges were first filed in state fair employment practice agencies. *See* 42 U.S.C. § 2000e5(e). Plaintiffs indicate that the bar is one of the following: 1) earliest filing - plaintiff Williams' charge on December 23, 1996; 2) earliest classwide charge raising promotions issues - plaintiff Stroud's charge on January 25, 1997; 3) earliest pattern and practice charge - plaintiff Qualls' on February 12, 1997[7]. Amtrak argues that relying on Williams' individual charge would not serve the purpose of an administrative complaint, as it would not have been reasonable to uncover the alleged system of discrimination by the class, citing *Mayfield v. Meese*, 669 F. Supp. 1123, 1127 (D.D.C. 1987). The Court agrees with Amtrak that the purposes of the filing requirement would not be served by allowing plaintiffs to piggyback class claims onto Williams' individual claim. Amtrak has conceded, for purposes of this motion, that plaintiff Stroud's charge may serve as the applicable bar. At this time, the Court will use plaintiff Strouds' charge for purposes of determining the statute of limitations bar, which will be April 4, 1996. Upon development of the factual record plaintiffs may

---

[7]Defendants argued that the bar is plaintiff Batts' July 17, 1997 charge. However, it appears that plaintiffs' Williams, Stroud, and Qualls all filed earlier charges, which is not disputed by Amtrak.

raise this issue again, if an even earlier class claim exists or
for good cause shown.

Plaintiffs also argue that any claims by non-filing
plaintiffs that arose prior to the applicable 300-day period, are
timely nevertheless by the application of the continuous
violation doctrine.  *See* Section II.A. *supra*.  Again, the Court
will determine which claims are amenable to the continuing
violations doctrine after the development of the factual record.


D.   Failure to State a Claim

When considering a motion under Rule 12(b)(6), the Court
must accept plaintiffs' factual allegations as true, see *Albright*
*v. Oliver*, 510 U.S. 226, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114
(1994), and draw all inferences in plaintiffs' favor.  *See*
*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.
2d 90 (1974); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271,
1276 (D.C. Cir. 1994).  To prevail, the defendant must show
"beyond doubt that the plaintiff[s] can prove no set of facts in
support of [plaintiffs'] claim which would entitle [them] to
relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2
L. Ed. 2d 80 (1957); see also *Sparrow*, 216 F.3d at 1111.

Amtrak asserts that the complaint contains allegations of
discrimination against persons not named in the complaint and

17

that such allegations fail to state a claim.  Plaintiffs, by
including these allegations, appear to be establishing the
existence of systemic discrimination.  These allegations may not
form the basis of a claim by an individual plaintiff.  *See Warth
v. Seldin*, 422 U.S. 490, 498-99 (1975)(holding that a plaintiff
must assert that he personally suffered some injury).  However,
these allegations are certainly evidence of a systemic and class
wide problem.  *See Hartman v. Duffy*, 158 F.R.D. 525, 546 (D.D.C.
1994), *aff'd in pertinent part, Hartman v. Duffy,* 88 F.3d 1232
(D.C. Cir. 1996)(holding that a plaintiff need not experience
every manifestation of the alleged policy of discrimination to
have standing to represent class members on their individual
claims); *see also United Air Lines, Inc. v. Evans*, 431 U.S. 553,
558 (1997)(holding that "[a] discriminatory act which is not made
the basis of a timely charge is the legal equivalent of a
discriminatory act which occurred before the statute was passed.
It may constitute relevant background evidence in a proceeding in
which the status of a current practice is at issue, but
separately considered, it is merely an unfortunate event in
history which has no present legal consequences.").  Accordingly,
plaintiffs need not strike these allegations from the complaint.

## III. **Motion for a More Definitive Statement**

Amtrak's motion for a more definitive statement is **GRANTED In Part.**[8]  At the hearing, the Court ordered plaintiffs to include dates of alleged events, to the extent possible, in an amended complaint.  The Court also orders plaintiffs to amend their pleading to include a more appropriate term to define the class, so as to exclude from the class definition the salaried managerial and professional positions that were included within the scope of the *McLaurin* class action discrimination case against Amtrak.

**IT IS SO ORDERED.**

9/6/01

DATE

EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

---

[8]Plaintiffs are not required to allege a *prima facie* case of disparate treatment, retaliation, or hostile work environment in their complaint.  *See Sparrow*, 216 F.3d at 1111; *fn. 1 supra*.

Notice to:

Timothy R. Fleming, Esquire
Robert F. Childs, Jr., Esquire
Scott A. Gilliland, Esquire
Lee D. Winston, Esquire
Jon C. Goldfarb, Esquire
Bryon R. Perkins, Esquire
Derek B. Brett, Esquire
GORDON, SILBERMAN, WIGGINS & CHILDS, P.C.
1621 Connecticut Avenue, N.W.
Suite 400
Washington, D.C.  20009
    *Counsel for Plaintiffs*

Thomas Reinert, Esquire
Grace Speights, Esquire
MORGAN, LEWIS & BOCKIUS
1800 M Street, N.W.
Washington, D.C.  20036
    *Counsel for the National Railroad Passengers*
    *Corporation (AMTRAK)*