FILED
SEP 26 2002
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                  )
KENNETH CAMPBELL, et al.,         )
                                  )
            Plaintiffs,           )
                                  )
       v.                         )   Civil Action No. 99-2979 (EGS)
                                  )   [104-1]
NATIONAL RAILROAD PASSENGER       )
CORPORATION (AMTRAK), et al.,     )
                                  )
            Defendants.           )
_____ )
```

## MEMORANDUM OPINION AND ORDER

Defendant National Railroad Passenger Corp. ("Amtrak") moves to dismiss individual claims of certain named plaintiffs in the third amended complaint. Amtrak alleges that plaintiffs have retained these claims in violation of this Court's September 6, 2001 Memorandum Opinion and Order ("Order"). Upon careful consideration of Amtrak's motion to dismiss, the opposition and reply thereto, the supplemental briefing with respect to the applicability of *National Railroad Passenger Corp. v. Morgan*, 122 S. Ct. 2061 (June 10, 2002), the entire record herein, and the applicable statutory and case law, the Court denies Amtrak's motion.

### I. Background

Plaintiffs in this action are current and former Amtrak employees. Plaintiffs filed a class action complaint against Amtrak and fifteen unions, in which they claim that the defendants have engaged in a pattern and practice of racially

discriminatory conduct. The complaint alleges racial discrimination in hiring, advancement, training, discipline, work and equipment assignment, and terms and condition of employment, as well as a hostile working environment created by defendants' racially discriminatory conduct. *See* Third Am. Compl. ¶¶ 115-23.

On September 6, 2001, the Court issued a memorandum opinion and order resolving defendant Amtrak's motion to dismiss or, in the alternative, for a more definite statement. *See Campbell v. Nat'l Railroad Passenger Corp.*, 163 F. Supp. 2d 19 (D.D.C. 2001). The Court denied the motion to dismiss, and denied in part and granted in part the motion for a more definite statement. *Id.* at 21. The Court further permitted plaintiffs to file an amended complaint reflecting the Court's ruling. *Id.* at 26.

In large part, the instant motion to dismiss turns on the parties' different interpretations of the Court's rulings with respect to defendant's statute of limitations defenses. In its Order, this Court held that plaintiffs' Title VII claims arising prior to April 4, 1996 and 42 U.S.C. § 1981 claims arising prior to November 9, 1996 were time-barred. *Id.* at 25, 27. The Court added that its holding on the statute of limitations did not exclude the possibility of the application of the continuing violation doctrine upon further development of the factual record. *Id.* at 26.

The Court's Order also held that individual plaintiffs could not maintain Title VII claims with expired right-to-sue notices by piggy-backing these claims on the charges of fellow plaintiffs under the single-file rule. *Campbell*, 163 F. Supp. 2d at 26. To do so, the Court held, would "seriously undermine the statute of limitations established for such actions." *Id*. The Court noted, however, that, after further development of the factual record, it would entertain the viability of equitable tolling of the statute of limitation for particular claims. *Id*.

Amtrak moves to dismiss Quinton Saunders' claims of discriminatory termination. Amtrak contends that the continuing violation theory does not apply and that, consequently, Mr. Saunders' claims are barred by the statute of limitations. In addition, Amtrak moves to dismiss the Title VII claims asserted by six plaintiffs, arguing that these individual plaintiffs' claims are based on expired right-to-sue notices. Amtrak also argues that the claims of three plaintiffs are covered by the settlement agreement in *McLaurin v. National Railroad Passenger Corp.*, and should therefore be dismissed.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court recently emphasized that, to survive a motion to dismiss

3

for failure to state a claim, a plaintiff need not plead facts beyond those which would "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S. Ct. 992, 998 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).

The Court will not grant a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the complaint's factual allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984); *accord Does v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1276. However, the movant is entitled to judgment if there are no allegations in the complaint which, even if proven would provide a basis for recovery. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (1987).

**III. Motion to Dismiss Individual Claims of Certain Plaintiffs**

    **A.   Quinton Saunders' Termination Claims**

Amtrak argues that Quinton Saunders' claims are barred by the statute of limitations. Mr. Saunders alleges that Amtrak's termination of his employment was racially discriminatory and in violation of Title VII and 42 U.S.C. § 1981. He contends that his claims are saved by virtue of the continuing violations doctrine, and that he was not aware of the discriminatory nature of the termination until his grievance was decided against him in May 1997. *See* Opp'n at 4. Mr. Saunders specifically alleges that he was "adversely affected by the systemic pattern and practice of racial discrimination," which included being subjected to a "racially hostile work environment," and culminated with his termination. Third Am. Compl. ¶¶ 494-98.

In its September 6, 2001 Order, this Court concluded: "The continuing violations doctrine will not save claims of individuals who were discharged prior to the statute of limitations period, unless they were unaware of the discriminatory nature until within the statute of limitations." 163 F. Supp. 2d at 25.

In *National Railroad Passenger Corp. v. Morgan*, 122 S. Ct. 2061 (June 10, 2002), the Supreme Court provided further guidance on the application of the continuing violations doctrine. In *Morgan*, the Court distinguished between claims alleging discrete

5

retaliatory or discriminatory acts and hostile work environment claims. *Id.* at 2070. The Court held that, for purposes of a hostile work environment claim under Title VII, 42 U.S.C. § 2000e-5(e)(1), if any act that is "part of the actionable hostile work environment practice" falls within the statutory time period, plaintiff's claim will be viable. 122 S. Ct. at 2076. The Court, however, expressly reserved judgment on whether pattern and practice claims of discrimination would be subject to the same rule. *Id.* at 2073 n.9.

Mr. Saunders alleges more than a discrete or isolated discriminatory incident; rather, he alleges a systemic pattern and practice" of discrimination. Third Am. Compl. ¶ 494. Mr. Saunders alleges that, in October 1988, he was passed over for a promotion in favor of a white employee with less experience, whom he was then required to train. *Id.* ¶ 495. He also alleges that he was subject to a "long period of abuse and hostility" after he complained about the promotion of the white employee. *Id.* On March 31, 1989, Mr. Saunders filed a claim of racial discrimination with Amtrak's internal EEO system. *Id.* ¶ 496. A hearing on Mr. Saunders' claim was held on May 2, 1989. Around this same time, Mr. Saunders also filed a discrimination claim with the D.C. Department of Human Rights and Minority Business Development. *Id.* Mr. Saunders alleges that, following his filing of discrimination claims, he was subject to retaliation by

6

Amtrak's management. *Id.* In particular, he claims that his termination on December 1, 1995 was retaliatory. *Id.*

Mr. Saunders claims that his termination was discriminatory, that his termination was part of a systemic pattern and practice of discrimination, and that he was subject to a hostile work environment. Pattern and practice claims, like hostile work environment claims, involve "repeated conduct" and a "series of separate acts" comprising a single "unlawful employment practice." *Morgan*, 122 S. Ct. 2073-74. If one of the acts underlying Mr. Saunders' hostile environment claim is attributable to the liability period, his claim is timely under the theory of continuing violations articulated in *Morgan*. Even assuming that Mr. Saunders' pattern and practice claim is subject to the limitations expressed in *Morgan*, the Court finds that Mr. Saunders has, at this stage in the proceedings, sufficiently alleged that one of the acts underlying his hostile environment and pattern and practice claims occurred within the statutory period.

A continuing violation, for statute of limitations purposes, "is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work

environment) that reveals it illegality." *Taylor v. F.D.I.C*, 132 F.3d 753, 765 (D.C. Cir. 1997) (internal citations and quotation marks omitted). Therefore, where a plaintiff alleges that he or she was terminated for discriminatory reasons, the continuing violation doctrine may apply if the plaintiff is subjectively unaware of the discriminatory nature of the firing until some point in time that falls within the statute of limitations period.

Mr. Saunders alleges that he became aware of the discriminatory nature of his termination in May 1997. The complaint is silent as to whether Mr. Saunders was aware of the discriminatory nature of the firing at the time he was terminated. Defendant argues that, because Mr. Saunders filed a grievance in 1989, he must have been aware of the alleged discriminatory nature of Amtrak's conduct, including the purportedly discriminatory nature of his termination. Yet, the fact that Mr. Saunders filed a grievance in 1989 in no way mandates a finding that Mr. Saunders was aware of the potentially discriminatory nature of his termination in 1995. Furthermore, plaintiffs' memorandum in opposition to the motion to dismiss represents that Mr. Saunders was unaware of the discriminatory nature of his firing until the processing of his grievance. *See* Opp'n at 4. While the Court is wary of permitting Mr. Saunders to essentially rely on the continuing violations doctrine twice,

8

to the extent that the continuing violations doctrine operates to bring the allegedly discriminatory termination within the statutory period, it also brings an act integral to Mr. Saunders' hostile environment and pattern and practice claims within the statutory period. Accordingly, at this stage in the proceedings, the Court will permit Mr. Saunders to proceed to discovery on all of his claims.

The Court further notes that, to the extent that Mr. Saunders alleges that he was unaware of the discriminatory nature of his termination until May 1997, when his grievance was processed, his claim of discriminatory termination may also be equitably tolled. *See Morgan*, 122 S. Ct. at 2068 (recognizing that equitable tolling doctrines may toll the time period for filing). As discussed in the following section, the Court specifically reserved consideration of the viability of equitable tolling of plaintiffs' claims until development of a factual record.

B.  **Plaintiffs' Title VII Claims**

Amtrak moves to dismiss the Title VII claims of plaintiffs Reachelle Francis, Sabrenna Mumphrey, Darrel Lathan, John McCargo, Donald Rogers and Quinton Saunders. Amtrak contends that these claims are barred by the statute of limitations. All of these plaintiffs filed EEOC charges. Generally, a plaintiff has ninety days after receiving a right-to-sue notice to bring

suit. 42 U.S.C. § 2000e(f)(1). Right-to-sue notices were issued to all of the plaintiffs at issue more than 90 days before the filing of this complaint in November 1999. *See* Def.'s Mot., Exs. 1-6.[1]

Plaintiffs argue that the specific claims at issue are not barred because the claims are: (1) saved by the doctrine of equitable tolling; or (2) are cognizable under the single-file rule because they can be piggy-backed on to other plaintiffs' perfected claims.

In its September 6, 2001 Order, this Court held that plaintiffs could not piggy-back claims, for which their right-to-sue notices had expired, onto the EEOC charge of another plaintiff. *See Campbell*, 163 F. Supp. 2d at 26. Specifically, the Court stated:

> [A] claimant cannot rely upon another claimant's charges for conduct which she has previously filed an EEOC charge, unless the statute of limitations in her right-to-sue letter is subject to equitable tolling. The Court will entertain the viability of the equitable

---

[1] Ms. Francis filed an EEOC charge on April 20, 1998 and was issued a right-to-sue notice on August 26, 1998. *See* Def.'s Mot. Ex. 1. Ms. Mumphrey filed an EEOC charge on February 23, 1998 and was issued a right-to-sue notice on September 4, 1998. *See* Def.'s Mot. Ex. 4. Mr. Lathan filed an EEOC charge in November 1998 and was issued a right-to-sue notice in January 1999. *See* Def.'s Mot. Ex. 2. Mr. McCargo filed an EEOC charge on November 10, 1998 and was issued a right-sue-notice upon request in January 1999. *See* Def.'s Mot. Ex. 3. Mr. McCargo subsequently was reissued a right-to-sue notice in November 2000 because of an administrative error. *See* Def.'s Mot. at 6 n.4. Mr. Rogers filed an EEOC charge in August 1996 and was issued a right-to-sue notice on February 19, 1997. *See* Def.'s Mot. Ex. 5. Mr. Rogers also alleges conduct that occurred almost two years after the conduct alleged in Mr. Rogers' EEOC charge. *See* Compl. ¶ 210. Mr. Saunders filed a complaint with the District of Columbia Office of Human Rights in August 1989 and was issued a right-to-sue notice from the EEOC on November 14, 1990. *See* Def.'s Mot. Ex. 6.

>     tolling of the statute of limitations for particular
>     claims after the development of the factual record.

*Id.* (footnote omitted).

### 1. Equitable Tolling

The Court clearly stated that it would consider plaintiffs' claims of equitable tolling *after* the development of a factual record in this case. Upon development of a factual record, the Court will be in a better position to consider the merits of plaintiffs' claims that equitable tolling may be applied to save their Title VII claims. Indeed, this approach will permit the court to follow the D.C. Circuit's advice that district courts undertake a "specific inquiry into and findings on the existence or non existence of such [equitable] considerations" before summarily dismissing discrimination claims. *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982).

Amtrak moves to dismiss plaintiffs' claims because they fail to allege a factual basis for equitable tolling. The Court understands some of defendant's frustration, as the facts supporting a claim of equitable tolling are indeed more likely to lie within plaintiffs', and not defendant's, control. Nevertheless, the Court is not inclined to revisit its decision to permit development of a factual record before considering the viability of plaintiffs' equitable tolling arguments.

### 2.  Single File Rule

Plaintiffs also argue that their Title VII claims should not be dismissed because they relate to incidents of discrimination that were not raised in these plaintiffs' EEOC charges. Accordingly, plaintiffs contend that, even if the Court were to find that their right-to-sue notices have expired, they should be able to piggy-back Title VII claims, which were not included in their EEOC charges, onto the Title VII claims of other plaintiffs with non-expired right-to-sue notices. Pursuant to the Court's Order, to the extent that discrimination alleged in the complaint was *not* part of plaintiffs' original EEOC charges, such claims may be permitted to be piggy-backed under the single-file rule. *See Campbell*, 163 F. Supp. 2d at 26 n.4.

The Court need not reach the novel issues presented by the parties' arguments regarding the proper scope of plaintiffs' original EEOC charges.  To the extent that the Court has not yet ruled on plaintiffs' claim that equitable tolling saves their Title VII claims, the Court assumes for purposes of resolving the instant motion that plaintiffs' right-to-sue notices are not "stale."  The Court has permitted plaintiffs to proceed to discovery and to develop a factual record that may support their claims that equitable tolling saves their Title VII claims. Therefore, in the interests of judicial economy, the Court refrains from now considering the implications of the single file

rule for the viability of plaintiffs' Title VII claims, and denies defendant's motion to dismiss on these grounds without prejudice.

### C. *McLaurin* Settlement

Amtrak contends that the third amended complaint maintains claims by plaintiffs Morgan, Lathan, and McCargo that were disposed of by the settlement of *McLaurin v. National Railroad Passenger Corp.*, Civ. Action No. 98-2019, Order Finally Approving Consent Decree, Nov. 1, 1999. The Release of Claims signed by plaintiffs in *McLaurin* applies specifically to "Management positions." Amtrak's attempt to read the Release of Claims more broadly is not supported by the plain language of that document. The release applies to

> any and all direct, indirect, representative, individual and/or class claims, allegations, actions, rights, obligations, liabilities and causes of action of whatsoever kind or nature, arising up to and including September 30, 1999, which arise out of or relate to my application for a Management position (as defined by the Consent Decree), or my employment, compensation and benefits in a Management position at Amtrak or the termination of my employment, compensation and benefits in a Management position at Amtrak.

Opp'n Ex. D. While the release contains broad, general language, its scope is clearly limited to management positions. Contrary to Amtrak's assertion, the allegations in the *McLaurin* complaint do not define the scope of the settlement; instead, the settlement is based on the terms of the Release of Claims and

13

Consent Decree.  In this case, the Court required plaintiffs to provide a more detailed statement in an amended complaint to ensure that plaintiffs' claims are not covered by the *McLaurin* settlement.  *See Campbell*, 163 F. Supp. 2d at 28.

Ms. Morgan clearly raises only "non-management" claims. Third Am. Compl. ¶¶ 593-94.  Plaintiffs state that, with the benefits of discovery, they will be able to determine which of Ms. Morgan's applications for promotions were for bargaining unit positions and which were for management jobs.

Mr. Lathan contends that Amtrak discriminated against him by assigning him more work than his white co-workers.  *Id.* ¶ 243. Thus, plaintiffs argue, Mr. Lathan's claim is properly characterized as a terms and conditions claims, and not a promotion claim.  Opp'n at 11.  They further state that, to the extent that development of the factual record in this case suggests that damages flowing from Mr. Lathan's claim are subsumed by any damages award under *McLaurin*, Amtrak may argue this in a motion for summary judgment.  *Id.* at 11-12.

Finally, with respect to Mr. McCargo's claim, while Mr. McCargo's demotion is mentioned in the *McLaurin* complaint, the complaint alleges that his demotion occurred while he was a bargaining unit employee.  Compl. at ¶¶ 515-19.  If this allegation is accepted as true, Mr. McCargo's claim is not covered by the *McLaurin* settlement agreement.

14

The Court is convinced that the claims of Ms. Morgan, Mr. McCargo and Mr. Lathan are pled sufficiently to survive a motion to dismiss. The defendant is in no way precluded from raising this issue in a motion for summary judgment if, upon further development of the factual record, it appears that these plaintiffs' claims relate to management positions, or application to a management position.

## IV. Conclusion

For the foregoing reasons, and upon careful consideration of defendant's motion to dismiss several plaintiffs' individual claims in the third amended complaint, the opposition and reply thereto, the entire record herein, and the applicable statutory and case law, it is hereby

**ORDERED** that defendant's motion to dismiss several plaintiffs' individual claims in the third amended complaint [104-1] is **DENIED** without prejudice.

**IT IS SO ORDERED.**

9/26/02
DATE

EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

15